Thank you for the opportunity to appear before you this morning on behalf of Michael Kenny. In this case, there are two central considerations upon which all of the other relevant issues and those two considerations are the enforceability of the underlying non-compete agreement and the relevant standard of review. I wondered whether you were here on behalf of Mr. Kenny or really on behalf of yourself because this seems like it was a pretty good deal for your client and that maybe what's really going on is you're concerned about an attorney's fee claim. No, sir, your honor. Not whatsoever. In fact, in the- Why was there a motion to disqualify you in the state court litigation? There was a motion to disqualify me in the state court litigation based on the claim that I had made several settlement offers to opposing counsel and that those settlement offers and my breakdown of the relevant law, their exposure, the history of the proceedings had undermined their client's faith in their own counsel and that I had made public statements and interviews about CIS and its business practices. That was essentially the predicate for the motion to disqualify me in the trial court proceedings and it was filed at calendar call, on the morning of calendar call. Why did you then go ahead and file the bankruptcy then? I mean, while that was pending. Certainly, certainly. Mr. Kenny was and had for quite some time been indigent. He had previously been interested in declaring bankruptcy but did not have the means to hire and pay a bankruptcy attorney to prosecute his bankruptcy case. At the time, Mr. Kenny was actually relying on payday loan advances against his social security and so as time went on, Mr. Kenny's financial situation became increasingly desperate and then when he was faced with the prospect of going to trial against CIS, possibly with no counsel, we submit that the motion to disqualify was a litigation tactic and should have and would have been denied but nonetheless he was potentially running the risk of not having counsel. He was indigent. He was it became a viable option for Mr. Kenny to declare bankruptcy because he did have significant debt. He was upside down. But I guess the thing that makes it a little confusing to me is if if there really was no merit to the motion to disqualify you in the underlying case, then and I think you maybe I misunderstood. I thought you conceded that that the bankruptcy was filed as a tactic to stall on the motion to disqualify you. Did I misunderstand that? The bankruptcy court was the bankruptcy filing was a decision based on two components. One, Mr. Kenny's debt and reliance on payday loans and and two, the prospect of the disqualification which we contemplated that all of this could be resolved in bankruptcy court. But I guess my question for you then is if there were no merit whatsoever, if you thought there wasn't any merit to the motion to disqualify, then why is it necessary to stall that litigation? In other words, it's sort of going to how good the claim was, right? I my opinion, my legal opinion was that Mr. Kenny financially would benefit from declaring bankruptcy, would get a clean slate and that these issues could be better resolved in bankruptcy court. And this is perfect. To me he did. Excuse me? Seems to me he did. Maybe your legal opinion about that was right. I felt that if you look at the background here in terms of CIS's prior history in Pinellas County, CIS had previously obtained certain agreed injunction orders from Pinellas County, which CIS's counsel had written. And when you read these orders, they contain pronouncements such as CIS's non-compete agreement is entitled to unqualified enforcement. The types of things that, you know, would cause one to question if Mr. Kenny would be given a fair shake continuing down that path in Pinellas County. And so for a variety of reasons, I thought he would receive more due consideration in in federal court and in bankruptcy court, even given the landscape of bankruptcy law. Because if we look at when he got it, I mean, he got a discharge of his debts, right? He did get a discharge of his debts. He walked out free and he did. But Mr. Kenny. And what we're here today about is whether it was an abuse of discretion for the district court to have approved a settlement agreement that best I can tell really benefited your client. I don't believe it did. And if I can touch upon abuse of discretion, I think in Justice Oaks, the court suggests that abuse of discretion is akin to the likelihood of success standard on a preliminary injunction. And so if we consider that and we look at what the court did here, the court did not conduct any evidentiary proceedings. The court did not take any live witness testimony. You concede, don't you, that the bankruptcy court didn't have to make a full merits determination of the state law litigation before approving the settlement, right? I do concede that they did not have to make a full merits determination. Then you argue that the bankruptcy court should have determined whether there was a legitimate business interest justifying the restrictive covenant. I don't know how you square those two positions. Well, on the one hand, you don't have to make a full merits determination. On the other hand, you need to make merits determination. I believe there is there is space between not needing to make a full merits determination and what the bankruptcy court did here. Because what the bankruptcy court did here is essentially say, Mr. Kenney cites some cases on one hand, but CIS has prevailed in these state trial court proceedings. And it stops there. And it does not provide any meaningful analysis of the strength of the respective positions. Certainly not the type of analysis that would be sustained in the context of a preliminary injunction where you're looking at substantial likelihood of success. It could not be said that on this record, CIS had a substantial likelihood of success in improving its claims. Because these are state trial court orders. When we're talking about what is, yes, sir? So one question about that. So CIS got a $300,000 claim against the estate, but it was subordinated to include the claims of all the other creditors. So does it matter? I mean, that's one question I have is just why would it matter whether it's going to win or not? Yes, sir. Yes, sir. Yes, sir, your honor. If CIS was not deemed a valid creditor, if Mr. Kenney's objection to CIS's proof of claim had been given further consideration. A merits determination. Let's just assume that the $300,000 proof of claim was just denied. So then they don't have a $300,000 claim against the estate. Yes, sir. Yes, sir, your honor. What matter? I mean, how does that matter? It absolutely does. Because if CIS is removed as a creditor, there are only remaining less than $500 worth of creditors. And so at this point, the settlement framework was predicated on CIS being a creditor because CIS received some of the was to receive some of the proceeds of the settlement. And so if CIS is no longer a creditor, CIS is not receiving proceeds of the settlement and Mr. Kenney would be able to receive any excess that exists beyond what would pay those $500 worth of credit. Of course, we can't isolate it because CIS actually contributed to the estate, right? Mm hmm. Well, if CIS's proof of claim was rejected, it would be rejected on the basis that the non-compete agreement was unenforceable under Florida law. But they paid $30,000, right? Yes. But if they're... Which benefited the estate and your client? It benefited the administrative costs of the estate and the $500 worth of creditors. But if CIS's proof of claim had been rejected under Florida non-compete law, there would have been immediate exposure in the form of Mr. Kenney's tortious interference claim for economic and non-economic damages and for attorney's fees, which I've already stipulated in the record that I would have waived any claim to. Okay. You've saved five minutes for rebuttal. Let's hear from Mr. Fraser. Thank you. May it please the court. Good morning, Your Honors. Michael Friedman on behalf of Stephen Meininger, who's the Chapter 7 trustee for Mr. Kenney's bankruptcy estate. This morning, I'm going to talk briefly about the standard of review, and then I'll explain why the bankruptcy court did not abuse its discretion in concluding and finding that the settlement did not fall below the lowest point on the range of reasonableness, which is standard. I want to briefly, though, just address some of the colloquy between the court and Mr. Pollard about the statements in the record below about the reasons for the bankruptcy filing, which are pretty clear in the record, an admission that it was filed to forestall that motion to disqualify. That statement was set forth in an attachment to the debtor, Mr. Kenney's statement of financial affairs, which is a sworn document, and there was never any dispute below or in the district court appeal about that motivation. I'm hearing for the first time today that perhaps instead it was actually forum shopping to try to get away from the Pinellas County Circuit Court, which I'm not sure if that's any better, but for purposes of the record before the court, it's pretty clear what the motivation was, and that was to derail the disqualification hearing. Could you address the, I'm sure you will, but could you address the $300,000 claim against the estate? It just, the one thing that is confusing me about this case is the settlement, the structure of the settlement is where, you know, such that CIS is paying in money to the estate and then also retaining a claim that's subordinated to the estate. How, as a practical matter, is that supposed to work? As a practical matter, the purpose of that structure was that at the time that the settlement was struck, CIS was paying such a large amount relative to the trustee's fees and my firm's after doing work to object to other claims, was that there would be money left over, even after paying the debtor his full $10,000 in economic damages. So CIS wanted, to the extent there was a significant surplus, to be able to get that money back. If everybody else's pockets were filled to 100% CIS's position, which the trustee felt was reasonable, then can we have the surplus back? So that's what motivates the structure of the settlement. So as a practical matter, and maybe I just missed this in the record, but I mean, what actually happened? I mean, how much did CIS actually pay? It's undetermined because until this court decides that we can move forward, we're sort of frozen in a standstill. The trustee can't distribute that money. But if the proof of claim, if their subordinated claim had been $50,000, it wouldn't really make any practical difference, would it? Or a million dollars, $10 million. Or $50,000. Correct, Judge. That's true. It would make no practical difference whatsoever. My problem, I mean, I guess it's just, we just don't know, I guess is maybe the answer to this, but I'm just trying to figure out what is the value of the settlement? If the party who is paying money has the right on the back end to take some of that money back, it just seems very, very confusing as to how you would actually value the settlement. Well, the value of the settlement from the trustee's perspective is $30,000 and a 100% distribution to unsecured creditors. And 100% distribution to professionals. And I can tell you- And a discharge for the debtor. And a discharge for the debtor. And the individual consumer Chapter 7 debtor also standing to be in the money, which I will represent to the court, is an extraordinary result in a Chapter 7 bankruptcy. You usually don't get money out of a bankruptcy, right? So the debtor ends up with at least $10,000. And then CIS and the debtor split through this rubric that you've created, whatever. Right, exactly, exactly. And having done a lot of Chapter 7 trustee consumer individual representations, to get pennies on the dollar, to get fraction of a penny on the dollar to unsecured creditors is considered a successful case. So to get 100% to unsecured creditors is a slam-gram home run result in the bankruptcy case. I think that's part of what was motivating the bankruptcy court to opine on the record that this is a great deal. This clearly falls well above the standard that applies, which is an extremely low abuse of discretion type standard. So let me shift gears to talk a little bit about the standard, which is abuse of discretion. I think it's important for the court to bear in mind that what the bankruptcy judge was reviewing was this discretionary business judgment type decision that the bankruptcy trustee is making of, what am I going to do to sell and administer and dispose of this asset? That in and of itself is a decision that the bankruptcy judge is supposed to afford significant deference, because it's a business judgment decision. And then this court affords the bankruptcy court's discretionary decision, abuse of discretion, deference. So the court here is looking at this through the prism of sort of this double discretionary layer of review. Highly, highly deferential. I call it habeas double deference. Double deference. So there you go. I haven't done a habeas case, Judge, but there you go. You've learned something new this week. I've learned something new today. So I'll just briefly touch on the factors that the court considered. I don't want to take up too much of the court's time unnecessarily. All of the main action is really in consideration of the first Justice Oaks factor, which is probability of success on the merits. And the bankruptcy court acknowledged on record candidly that Mr. Kenny has this non-frivolous case. That's every case that's ever been settled is a non-frivolous case. So if that's not good enough, right, if that's what prevents the bankruptcy court from approving a settlement, no settlement would ever be approved. And I can tell you, by the way, in communicating with CIS, they certainly do not agree that the case is non-frivolous. They intended to litigate it vociferously. Well, I'm not sure you really want to get into that. I mean, it's a two-year non-compete for 50 miles anywhere they do business. For a guy who was a security guard, a line security guard, it's really hard for me to understand how that would be valid. Got it, Judge. Got it. And that's why the bankruptcy judge's really main motivating observation in its discretionary ruling here is the most important one, which is that even if that's right, this is still a great deal because Mr. Kenny is going to be capped at $10,000, and there's no dispute about that on his economic damages. And here we have CIS looking to pay three times that amount to settle it. Mr. Pollard argues about the non-economic damages, which the bankruptcy trustee perceived as being speculative and not worth risking this to go after. The bankruptcy judge agreed. The district court agreed. You have Mr. Pollard talking about somehow he's going to get a $300,000 attorney's fee award on a $10,000 claim. And the district court astutely pointed out that under Florida law, a judge is going to award reasonable attorney's fees, and the trustee does not think it's very likely in his business judgment that a $300,000 fee award is going to be sustained on a $10,000 award of economic damages. And the district court, as I said, astutely pointed that out in her decision, citing the patient's compensation fund case from the state of Florida Supreme Court. So at bottom, what you have is this choice that the trustee is facing, which is guaranteed recovery of three times the maximum potential economic damages on the claim, no delay associated with litigation, no delay associated with trying to go collect after getting the judgment. It distributes 100% to unsecured creditors of the estate, which is an extraordinary result in a Chapter 7 bankruptcy case, completely resolves the entire case, avoids having to litigate Mr. Pollard's disqualification issue, because remember, the whole premise of this objection is that we should hire Mr. Pollard to go forward and fight the good fight, but he filed the bankruptcy in the record, admittedly, to avoid getting disqualified. So it's either take that deal or gamble everything on litigation, even though in the litigation result, creditors could not possibly do any better than they're doing under the deal. I would submit that it would practically be trustee malpractice, for the trustee have made $10,000. What's that? Excuse me, Judge? The debtor could get up to $10,000. You left that part out. Unheard of in a Chapter 7 bankruptcy case that the debtor might get a distribution at the end of the day. So again, the trustee, in my view, in my professional judgment, virtually had no choice but to take the deal. He would have been committing, I think, potentially a breach of fiduciary duty to do anything else. And I could go over the other Justice Oaks factors, Your Honors, but I don't want to take up your time. If you have any questions, I'm happy to address those, but otherwise, unless the Court has questions for me, I'll just yield the rest of my time. I don't hear any. Okay, thank you so much for the time, Your Honors. Mr. Pollard, you've got five minutes. First, I'd like to begin with the $10,000. The settlement contemplated that Mr. Kenney could receive up to $10,000. There was no guarantee that Mr. Kenney would actually receive anything. But he would get that before CIS would get anything. He would, but there were also considerations about administrative costs, the estate, and our concern was— How many times did Chapter 7 debtors get $10,000? And I understand that is generally the landscape, but here, I think it is somewhat of an extraordinary situation. This man was an $11 an hour security guard with an aggressive two-year non-compete agreement, and CIS thwarted him from going up the street and getting a job as a bank security guard for $15 an hour. And if the Court, if the trustee had, the trustee did not even challenge CIS's proof of claim for $300 and some odd thousand dollars predicated on its— Problem though, there are a couple problems, right? One of them is that you have said that you must be the attorney on this case because it's a very specialized and complex thing. And there's a pending motion against you to be disqualified. And on the eve of that happening, you file the bankruptcy case and you concede that you filed it to forestall a resolution of the motion to disqualify. Not only that, but you're seeking $300,000 in punitive damages, which is anybody's guess as to whether you'd get any punitive damages, no matter how good your case is. So why was it an abuse of discretion for the Court to conclude that, in considering the likelihood of success here, that there were just too many risks involved?  Why was that an abuse of discretion? Yes, Your Honor. Because the Court did not engage with the relevant legal authority with respect to the operative non-compete agreement. And if the Court engaged with that and... So you're requiring the district court or the bankruptcy court to make a merits determination, which you concede that that's not what's required. But even looking at the question of probabilities and substantial likelihood, the overwhelming weight of well-established binding case law to the DCAs makes it clear that this man was subject to an unenforceable non-compete agreement. But even, let's just take that as a granted. Yes, Your Honor. Here's the problem. You have said that you're the only person who can prosecute this case. That's what you've said. There is a pending motion for your disqualification. And you've admitted that you've filed the bankruptcy case to forestall resolution of that motion. So why is that not a serious risk that the bankruptcy court and then the district court are perfectly appropriate in taking into account and resolving this, regardless of how good you think the claim is? Certainly, Your Honor. If the Court says the non-compete is unenforceable, then there's immediately... Which is a merits determination, but go ahead. But if the Court says that, then there's immediately substantial fee exposure, which would have to be paid into the estate immediately upon the Court saying the proof of claim is rejected and non-compete is unenforceable. Under your scenario, right? Yes, Your Honor. Mr. Kenney doesn't have an attorney because, for whatever reason, you lose the motion to disqualify. I mean, that's a serious problem. No one else can handle it now. Why isn't that? I mean, it seems like that's a serious risk of litigation. Why is that not? I understood. At that point, if the Court had determined the non-compete was unenforceable, it would have made the case far more attractive to any other number. But only you have the ability to handle it. That's the problem, right? But what I stated with respect to this case in that particular instance was that on the brink of trial, nobody else was going to step in and take over Mr. Kenney's case for him, certainly not pro bono. That was the operative consideration, that I was the only person who was going to be willing to do that in a case of this complexity, magnitude, tenure, etc. Nobody else was going to step in and represent him on the brink of trial for free. That was the sort of underlying crux of that point. But if the Court determined that the non-compete agreement was unenforceable, it would have immediately made the case far more attractive to any number of practitioners to step in and prosecute it. And the entire settlement framework would have then been upended because CIS would no longer have been considered a valid creditor. And the funds that were being paid into the estate, CIS would have still had an incentive to settle, and that dollar amount would have been substantially higher. Okay. Thank you. Thank you, Mr. Pollard. We're going to move to the next case.